# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GEORGE FREEMAN and
FLORIDA CARRY, INC.,

      Plaintiffs,

v.                                    CASE NO:  8:15-CV-2262-T-30EAJ

CITY OF TAMPA, FLORIDA,
a municipality, ROCCO CORBINO, an
individual, TRAVIS A. RICHARDS, an
individual, JOHN DOES, Three Unknown
Officers of the Tampa Police Department,
individually, RONALD E. GRAHAM, in
his official capacity, RONALD E. GRAHAM,
individually, ERIC WARD, Chief, in his
official capacity, ERIC WARD, Chief,
individually, ROBERT F. BUCKHORN,
in his official capacity, and ROBERT F.
BUCKHORN, individually,

      Defendants.

_____/

# __ORDER__

      THIS CAUSE comes before the Court upon Defendants' Amended Motion to Dismiss

(Dkt. #11) and Plaintiffs' Response in Opposition (Dkt. #12).  The Court, upon review of the

motion, response, and being otherwise advised in the premises, concludes that the motion

should be granted in part and denied in part.[1]

---

[1]

Plaintiffs do not oppose dismissal of the official capacity claim against Defendant Ronald Graham.
This claim will be dismissed with prejudice.  Defendants' motion is also granted to the extent that
Count 11 is dismissed without prejudice.  The motion is otherwise denied.

## BACKGROUND

Plaintiffs George Freeman and Florida Carry, Inc. filed the instant action under Florida Statute § 790.33, the firearms preemption statute, and 42 U.S.C. § 1983, against various Defendants related to the events that occurred on June 13, 2015, when Freeman was fishing at the Ballast Point Pier while openly carrying a firearm.  Specifically, on or about June 13, 2015, Freeman was fishing at the Ballast Point Pier in Tampa, Florida.  The Pier is located in Ballast Point Park, a public park.  Freeman, who is left handed, was in possession of an openly carried firearm in a vertical shoulder holster on his right side.  Freeman, a Florida Concealed Weapons Firearms License holder, was also in possession of a concealed firearm on his belt.

While he was fishing, Defendants Rocco Corbino and Travis A. Richards, police officers employed by the Tampa Police Department, approached Freeman from behind and, without warning, suddenly grabbed Freeman and attempted to seize Freeman's openly carried firearm.  One of the officers removed the firearm from Freeman's shoulder holster and asked Freeman if he had any other firearms in his possession.  Freeman stated that he was lawfully carrying a concealed firearm in addition to his openly carried firearm. Defendant Officers then conducted a warrantless search of Freeman and seized his concealed firearm.  Defendant Officers also seized Freeman's cell phone, wallet, keys, and conducted a search of Freeman's cell phone, including a search of Freeman's contacts list and GPS data.

Freeman attempted to inform Defendant Officers of his right to openly carry a firearm while fishing as provided under Florida law (Section 790.25) but one of the Officers stated to Freeman: "I don't want to hear that shit."  (Dkt. 2 at ¶54).  Defendant Officers, without Freeman's consent, then removed him from the pier where he was fishing and forced him to go to their patrol car.  At some point, Defendant Officers asked Freeman if he had any additional firearms.  Freeman acknowledged that he had an additional firearm in his vehicle.  Without his consent, Defendant Officers then seized this third firearm.  Defendant Officers conducted a serial number search of Freeman's firearms through a database and kept a record of the information.

During the course of the detention, Defendant Officers repeatedly threatened Freeman with arrest.  They informed Freeman that this was not the "Wild West."  (Dkt. 2 at ¶62).  They asked Freeman why he was carrying two guns and questioned him about who he was associated with on the pier.

After being detained over seventy minutes, Defendant Officers told Freeman he would not be arrested.  Defendant Officers returned Freeman's firearms to his vehicle in envelopes, unloaded.  Freeman was issued a Trespass Warning by the City of Tampa Police Department prohibiting him from visiting Ballast Park Pier for the duration of the Trespass Warning.  The Trespass Warning stated that "[s]ubject was fishing at pier while carrying openly a handgun in a side holster.  Tampa Police received a complaint from [a] citizen who was fearful of subject's firearm."  (Dkt. 2 at ¶70).  The Trespass Warning was effective for 180 days for city parks or other public property.

Freeman was a member of Florida Carry, Inc., an organization that exists for the purpose of representing the rights of Florida firearms owners.  As a result of Defendant Officers' actions, Florida Carry's members have been adversely affected; they fear arrest and prosecution if they engage in their right to openly carry a firearm while fishing in a Tampa location.

Defendants now move to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).   However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  On the contrary, legal conclusions "must be supported by factual allegations." *Id.*   Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

### I.  Claims under Florida Statute § 790.33 (Counts 1-6 and 12)

Defendants argue that Plaintiffs' claims under section 790.33 fail to state a claim.  The

Court disagrees.  Section 790.33 states in relevant part:

(1) Preemption.—Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void.

(2) Policy and intent.—

(a) It is the intent of this section to provide uniform firearms laws in the state; to declare all ordinances and regulations null and void which have been enacted by any jurisdictions other than state and federal, which regulate firearms, ammunition, or components thereof; to prohibit the enactment of any future ordinances or regulations relating to firearms, ammunition, or components thereof unless specifically authorized by this section or general law; and to require local jurisdictions to enforce state firearms laws.

(b) It is further the intent of this section to deter and prevent the violation of this section and the violation of rights protected under the constitution and laws of this state related to firearms, ammunition, or components thereof, by the abuse of official authority that occurs when enactments are passed in violation of state law or under color of local or state authority.

(3) Prohibitions; penalties.—

(a) Any person, county, agency, municipality, district, or other entity that violates the Legislature's occupation of the whole field of regulation of firearms and ammunition, as declared in subsection (1), by enacting or causing to be enforced any local ordinance or administrative rule or regulation impinging upon such exclusive occupation of the field shall be liable as set forth herein.

. . .

(f) A person or an organization whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy promulgated or caused to be enforced in violation of this section may file suit against any county, agency, municipality, district, or other entity in any court

of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief and for actual damages, as limited herein, caused by the violation. A court shall award the prevailing plaintiff in any such suit:

1. Reasonable attorney's fees and costs in accordance with the laws of this state, including a contingency fee multiplier, as authorized by law; and
2. The actual damages incurred, but not more than $100,000.

The crux of Defendants' argument is that Plaintiffs do not allege a specific ordinance, administrative regulation, or rule that impinges on the legislature's preemption. Defendants point out that the City of Tampa ordinance that was in conflict with the legislature's preemption was repealed approximately nine months before the June 2015 incident with Freeman.

As Plaintiffs state in their response, Defendants' argument is without merit at this stage. The allegations of the complaint are clear that Defendant Officers believed that Freeman could not openly possess a firearm while fishing. The fact that the ordinance they were operating under had previously been repealed is of no import. Freeman alleges that he was in lawful possession of the firearms at the time they were seized. Defendant Officers' seizure of those firearms was based on their mistaken beliefs that Freeman was violating a City of Tampa rule, regulation, policy, or procedure. They detained Freeman for over seventy minutes. During that time, they searched Freeman and Freeman's car and ran the serial numbers of Freeman's firearms. They also issued a trespass warning that prohibited Freeman from visiting Ballast Point Pier for a period of time. These facts are sufficient to state a claim under section 790.33. Accordingly, Defendants' motion to dismiss the section 790.33 claims is denied.

## II.      Section 1983 Claims (Counts 7-11)

### A.      Qualified Immunity

Defendants first argue that Defendant Officers are entitled to qualified immunity.

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Thus, to state a prima facie claim under section 1983, Plaintiffs must establish that (1) Defendants' conduct caused the constitutional violation, and (2) the challenged conduct was committed "under color of state law."  *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276-77 (11th Cir. 2003).

With respect to qualified immunity, the Eleventh Circuit explains that:

> When government officials act in a way that knowingly violates a clearly established statutory or constitutional right of which a reasonable person would have known, they are not immune from suit and may be held liable for the damage their actions caused. *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  But when these same officials make decisions that do not knowingly violate such rights, they are not required to defend themselves in a lawsuit seeking damages. *Id.*  They are "immune" from suit. *Id.*  We call this defense "qualified immunity" because the official is immune from a damage lawsuit, qualified upon his ability to show that he did not knowingly violate the plaintiff's clearly established constitutional right. *Id.*

*Ray v. Foltz,* 370 F.3d 1079, 1081-82 (11th Cir. 2004).  A plaintiff withstands a motion to dismiss predicated on qualified immunity by alleging "sufficient facts to support a finding

of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla. Dep't of Transp.,* 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Oliver v. Fiorino,* 586 F.3d 898, 905 (11th Cir. 2009)); *see also Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir. 1990) ("[T]he defendant is entitled to dismissal when the plaintiff has failed to *allege* a violation of a clearly established right.") (emphasis in original).

Freeman alleges that Defendant Officers violated the Fourth Amendment because they lacked reasonable suspicion to detain him and search him.  Freeman also alleges that Defendant Officers violated the Second Amendment to the extent that they interfered with his constitutional right to keep and bear arms.  Defendants quibble with the facts, arguing that Defendant Officers had arguable reasonable suspicion to temporarily detain Freeman based on Fla. Stat. § 790.053(1), which prohibits the open carrying of a weapon.  Defendants argue that Defendant Officers did not know that openly carrying a handgun while fishing was exempted conduct so they did not "knowingly" violate the law.  And that arguable reasonable suspicion can be supported by a mistake of law.  This argument may ring true at the summary judgment stage.  But the alleged facts, which this Court must accept as true at this stage, do not state or even suggest that Defendant Officers were acting under a mistake of law.  Thus, qualified immunity cannot be determined at this time.  Defendants' motion to dismiss on this issue is denied.

### B.     Municipal Liability

Defendants next argue that Freeman's section 1983 claim against the City of Tampa for failing to train Defendant Officers regarding an individual's right to openly carry firearms

while fishing is subject to dismissal because Freeman does not allege any prior similar pattern of incidents that would have placed the City of Tampa on notice of a need to train its officers.  The Court agrees that the allegations are insufficient to state a claim against the City of Tampa.

To state a section 1983 claim against a municipality, Freeman must allege that the execution of a government entity's official custom or policy caused the constitutional injury. *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 694 (1978).  Freeman must establish that (1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to that right, and (3) the policy or custom caused the constitutional violation.  *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Plaintiffs request the Court to infer a custom or policy because Defendant Officers' ignorance of the firearm exception suggests a failure to train on the City's part.  Plaintiffs contend "[t]he fact that out of six officers, including one in a supervisory capacity, not one objected to or realized that Freeman's conduct was entirely lawful, shows that this was not a case of a single officer being unaware of the law, but a pervasive issue where no officers appear to have been trained to deal with the law abiding gun carrier."  (Dkt. 12 at p. 14 of 21).  The Court cannot make this inference.  As such, this claim is dismissed without prejudice.  Freeman may amend this claim only if he can allege sufficient facts of any prior similar pattern of incidents that would have placed the City of Tampa on notice of a need to train its officers regarding an individual's right to openly possess a firearm while fishing.

-9-

### III.    Claims for Declaratory and Injunctive Relief (Counts 13-15)

Defendants argue in a conclusory fashion that Plaintiffs are not entitled to declaratory and injunctive relief.  At this stage, Plaintiffs have properly pleaded these claims.  Section 790.33 allows a person or organization whose membership is adversely affected to enforce a violation of section 790.33 against any municipality.  Section 790.33(3)(f) specifically includes "declaratory and injunctive relief" as appropriate remedies.  These claims pass muster at this stage, although, as Plaintiffs concede in their response, they are appropriate claims against only the City of Tampa, not the individual Defendants.[2]

It is therefore ORDERED AND ADJUDGED that:

1.    Defendants' Amended Motion to Dismiss (Dkt. #11) is granted in part and denied in part.

2.    The official capacity claim against Defendant Ronald E. Graham is dismissed with prejudice.

3.    Count 11 is dismissed without prejudice to Plaintiffs to amend this claim. Plaintiffs shall be mindful of their Rule 11 obligations and shall amend this claim only if they have sufficient facts of previous *similar* incidents that would have placed the City of Tampa on adequate notice of a need to train its officers.

---

[2]

Defendants' remaining arguments in favor of dismissal amount to a denial of the allegations and are inappropriate at the motion to dismiss stage.

4.       Defendants shall file their answer to the complaint within fourteen (14) days

of this Order.

**DONE** and **ORDERED** in Tampa, Florida on December 8, 2015.


_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

*S:\Even\2015\15-cv-2262 mtd 11.wpd*